CHANCERY.                *Payne vs. Cabell.*

Case 30.       Appeal from the Todd circuit; HENRY P. BROADNAX, Judge.

               *Vendor and Vendee. Rescission of contracts. Equity.*
                          *Deeds. Onus probandi.*

April 28.      Chief Justice BIBB, delivered the Opinion of the Court.
                   ON the 10th of October, 1818, Cabell
Statement.     sold and conveyed to Payne, by deed of general war-
               ranty, three hundred and eighty-one acres of land,
               lying in the county of Christian, on Little river, in
               consideration of six thousand eight hundred and fif-
               ty-eight dollars—being at the price of eighteen dol-
               lars per acre, and delivered possession.

                   In June, 1822, Payne exhibited his bill, and ob-
               tained an injunction against a judgment at law for
               about $1,200, besides interest and costs, the balance
               due on a bond given for the last payment of about
               $1,600.

                   The grounds of complaint in this bill are, that Ca-
Grounds of     bell has removed to Missouri, and is insolvent; that
Payne's com-   he has discovered that the claims sold to him are
plaint.        conflicted with by Joseph Williams', to the extent of
               about five acres; also, by one of James C. Cravens,
               of forty-two acres; and that to the tract of 67 acres,
               part of the 381, so sold, the vendor derived his
               title by purchase under the patent of Nicholas Haw-
               kins; that Jane and Joseph Hawkins had conveyed,
               being the widow and son of the patentee, but that
               Jesse and Enoch Hawkins, two of the heirs of the
               patentee, had not conveyed—they being infants.   To
               this bill Payne, Williams and Cravens, are made
               parties, and the claims of Williams and Cravens, are
               alleged to be superior to that of Cabell, and the de-
               fendants are required to litigate and settle these ques-
               tions.   By an amended bill, the complainant sugges-
               ted, that Thomas Hays held a *conflicting* claim of

14 1-2 acres; and that Calvin Boals held a conflict- <span style="float:right">Payne<br>vs.<br>Cabell.</span>ing claim of 9 1-2 acres, and their claims are alleged to be superior to that of Cabell, so sold and conveyed; and they are made defendants to litigate and settle those questions. The complainant in part of the purchase, had assigned to Cabell, a replevin bond on William F. Tegarden and sureties, for $2,624. Tegarden had injoined that debt for alleged defect in the title to the land which he had purchased; and Payne, alleging he expected to dissolve Tegarden's injunction, obtained an injunction against Cabell, to restrain him from collecting the amount of Tegarden, by virtue of Payne's assignment.

The complainant also charges that two of Cabell's surveys conflict with each other, five acres; that is to say, Hatfield's of 80 acres, and Robert Harrison's of 42 acres; that by consequence, the quantity sold is lessened by five acres. He farther alleges, Hatfield's survey, instead of 80 acres, holds out more than 100 acres; but he cannot find any conveyance from Hatfield to Hawkins, of whom Cabell bought this; that these interferences and defects of title, had spoiled the tract, and he prays the contract to be rescinded.

Cabell, by his answer, denies his insolvency, and every matter of complaint alleged, except the infancy of Jesse and Enoch Hawkins, at the date of his conveyance to Payne; but of that defect he alleges that Payne was informed, and agreed to risk the acquisition of the title from them at full age, according to a bond their friends had given, covenanting, that they should convey. But to obviate that, he produces their deed after their full age, dated 5th Dec. 1822, duly acknowledged, and recorded in Christian, on the 28th December, 1822; the youngest having, according to the proof, arrived at full age in May preceding. He also produces another deed from himself to Payne, duly acknowledged and recorded in Christian county, of the 6th April, 1823. <span style="float:right">Cabell's answer, removing the objections to the title.</span>

The defendant Boals, by his answer, denies that his small interference was ever intended to be asserted by him as the superior claim; and he disclaims all title and claim under it. <span style="float:right">Boals' disclaimer.</span>

PAYNE
vs.
CABELL.

Answers.

Injunctions
dissolved,
without dam-
ages.

Objections to
Cabell's title
alleged by
Payne, found
to be ground-
less.

Alleged defi-
ciency in
quantity
found with-
out founda-
tion.

The other defendants, Cravens, Williams and
Hays, answer, and allege their entries by virtue of
head-right certificates, to be superior to the claim of
Cabell, so sold to Payne.

The court dissolved the injunctions, but gave no
damages, and dismissed the bill with costs, and
Payne appealed.

The interferences of the adversary conflicting
claims, alleged by the bill, are not traced to any
foundation which can create a probability, or even
a suspicion, that they can disturb the claim and pos-
session so sold and transferred by Cabell to Payne.
The adversary claimants themselves, with Payne
to assist them, have not produced any adversary
rights, which in law or in equity, wear a semblance
of validity and superiority over those of Cabell.
Grants, or copies of grants from the land office, or
other documents upon which rights and interests to
lands are adjudicated, are not produced in evidence,
so as to enable this court to pronounce such assert-
ed adversary claims conflicting with those sold to
Payne, to be valid in law or in equity. The defi-
ciency of documentary evidence, and of other testi-
mony to sustain these asserted adversary rights, is
so great, as that the title of Cabell, which Payne
has acknowledged, by accepting the deed and pos-
session, cannot be said to have been thrown under a
suspicion, to be inferior to those of Williams, Cra-
vens and Hays.

The defect for want of conveyances from Jesse
and Enoch Hawkins, has been obviated by their
conveyances after they attained their ages of matu-
rity.

The complainant argumentatively asserts, that be-
cause the survey of Robert Harrison, of 42 acres,
and the part of the claim of Hatfield, as conveyed to
him by Cabell, clash with each other to the extent
of five acres; that, therefore, there is a deficiency of
quantity thence arising, and claims an allowance for
the deficiency of that five acres. In one breath he
alleges this conflict to the extent of five acres be-
tween Harrison and Hatfield's surveys, the one for
42 acres, the other for 80 acres; and thus argues

and claims, as for a diminution of five acres in the quantity sold; and immediately, *in eadem flatu*, he asserts a large surplus in Hatfield's survey, to magnify the injury he has sustained by defect of title, and the conflict of James C. Cravens' claim with the surveys of Harrison and Hatfield. But the error of the argumentative deficiency thus attempted to be imposed upon the court, is detected by inspection of the deed to Payne, and the abuttals of the several parcels, and their respective quantities as reported by the surveyor, as shewn by the complainant. The deed describes four several parcels by their abuttals. The quantity of but one parcel is given in the deed; that is of the extreme northern parcel which binds on the lines of Hatfield and Harrison; it is a part of Jeremiah Cravens' 300 acres, and part of Robert Cravens' 150; and this parcel is called fifty-five acres in the deed, which with the boundaries of the other three parcels, are stated to contain three hundred and eighty one acres—the quantity sold, and to be paid for. Now, the four parcels so conveyed, are thus reported by the surveyor: the original survey of 230 acres for the Franklin academy; this is the southern boundary. The northern parcel of fifty-five acres; Robert Harrison's survey of forty-two acres, and the parcel, part of Margaret Gray's and Hatfield's surveys, sixty-seven acres; these, if there had been no lapping between the interior abuttals, would have contained three hundred and ninety-four acres, instead of three hundred and eighty one. Therefore, the complainant could not make a direct and positive allegation, that the exterior lines did not include three hundred and eighty-one acres, nor call upon the surveyor to report whether there was a deficiency or a surplus, but claimed a deficiency as to five acres, by way of inference and deduction, from part of the facts. There is no evidence that the quantity conveyed falls short of the quantity sold and calculated at eighteen dollars per acre.

The insolvency of Cabell is denied, not proved, but repelled by the evidence. His removal to Missouri was contemplated at the time of the contract, and known to the complainant.

2 A

PAYNE
vs.
CABELL.

Vendee who accepts the title is presumed to have inspected the title and received the deeds; and therefore, to resist the payment of the price, must prove the defect of the title, besides shewing he has no remedy at law.

The vendee has accepted the deed, he has received possession, he has enjoyed it without disturbance; he alone has stirred up adversary claims, and when so stirred, neither himself nor the alleged claimants, have been able to make good their claims. A vendee will not be compelled to accept a conveyance under an executory contract, until the vendor exhibits a regularly deduced title, free from incumbrance, and apparently sufficient to assure the estate according to the contract. But a vendee who has accepted a deed, and the possession, with a covenant of warranty, is presumed to have inspected the derivations of title, and to have been satisfied with assurances; and to have received the title papers. After such acceptance of the possession, and deed, and covenant of warranty, a vendee, before eviction or disturbance, cannot receive the aid of a court of equity, to assist him to withhold the purchase money, or rescind the contract, but by taking on himself the burden of showing a defect in the title of the vendor, of a latent character, and of proving superior, outstanding, subsisting adversary rights and interests. This task the complainant did undertake, but has wholly failed of the performance.

Decree of affirmance.

It seems to this court, that the complainant has made out no case which requires the interposition of a court of equity, to relieve him from the payment of his purchase, or to rescind the contract; but that he should be left to seek his redress upon the covenant of warranty, in case of eviction, if such event shall ever happen; of which, however, the complainant has not shewn any probability. There is no error in the decree, to the prejudice of the appellant. It is, therefore, ordered and decreed, that the said decree of the circuit court be affirmed.

Appellee to be paid his costs.

*Triplett,* for appellant; *Mayes,* for appellee.